The next case is Berkheim v. Sirona Dental System. May it please the Court, my name is Kelsey Brown Corcoran and I am here on behalf of the appellant Sirona. This Court has long recognized that an arbitrator exceeds her authority under the FAA when she enters an award that ignores the clear meaning of the party's contract or adds provisions not contemplated by the parties. That is exactly what happened here. Excuse me, could you lower the microphone a little bit? There are three sets of factual findings in the arbitration decision that each independently foreclosed awarding petitioners the $3 million accuracy earn out under the express language of the party's agreement. I'll go through them one by one, but to preview, the first is the arbitrator's finding that the contractual requirements for the award were not satisfied. The second set is the arbitrator's description of the challenged conduct by Sirona, none of which was prohibited by the contract. And the third set of findings is the arbitrator's finding of commercial reasonableness and good faith with respect to that conduct. I'll go back to the first. The arbitrator here awarded the $3 million accuracy earn out despite making a factual finding that the contractual requirements for that earn out were not satisfied. And what she held was that they were entitled to the earn out. That's at the beginning on A21 of the arbitrator decision. She describes the question presented as whether they were entitled to the earn out and then at the end of the discussion of the accuracy earn out at 33-34, she concludes that they were entitled to the earn out. The petitioners do not contest that the contractual requirements were not satisfied and they do not defend the arbitrator's determination that they were entitled to the accuracy earn out anyway. So that's the first set. Moving on to the second set of factual findings, what the petitioners do is rewrite the award to hold the My understanding was that the arbitrator concluded that Sirona improperly withheld product finalization certification, that such testing as was conducted showed that Apollo had achieved a score of 77 during the 18-month threshold, and that would suggest that there wasn't a disregard of the agreement's requirement for a certain accuracy score. Rather, there were findings that you were improperly withholding it on the record. Why do you contend that she wasn't accurately finding the terms of the agreement satisfied? So that would be a breach of the agreement that would then lead to damages at the amount of the accuracy earn out, which is the theory that's offered by the petitioners. I'm dealing, though, with your argument that the arbitrator failed to apply the terms of the agreement. Now, I'm not suggesting that other fact-finders might have reached a different conclusion on this, but it does seem to be an application of the terms of the agreement, whether they satisfied the scoring requirement. So if you go to A33, there is a factual finding by the arbitrator that product finalization was not certified as of the 18-month anniversary. The reason it wasn't certified, in the arbitrator's view, was that you improperly withheld certification because such testing as was done suggested that they had a score of 77. As I said, I'm not saying you don't have contrary factual arguments, but she's finding that they satisfied the agreement's requirement. She does not actually anywhere in the agreement make a finding that product finalization was satisfied and that Serona simply refused to certify. Her factual finding was that Serona delayed the Argus team, which was responsible for product finalization, that the Serona delayed the completion of product finalization because it hired its own engineer to act in parallel with the Argus team to conduct a number of extra contractual tasks that were necessary for taking the product to market. Now, the arbitrator made a factual finding that those extra contractual tasks, again, being done by Serona itself, were commercially reasonable and in good faith, but that the coordination between the Argus team and the Serona engineer delayed product finalization, the actual certification of product finalization, not just certification. The arbitrator and the petitioners do not and cannot identify any language in the agreement that prohibited Serona from undertaking that conduct. As we point out in our reply brief, there's not a single quote of the supposedly expressed language that Serona— You're not suggesting that you could withhold the certification arbitrarily, right? No, that would be— To the extent that that's how the arbitrator's decision can be read. I mean, you know, we don't start with the assumption that arbitrators fail to apply the agreement. Quite the opposite. So you have a heavy burden. Yes, but let me just point out that the arbitrator's findings of commercial reasonableness and good faith necessarily preclude the possibility of a breach here under 304H, which says that there shall be no breach of the agreement by reason of any conduct undertaken by Serona that is consistent with prudent business practice. So I'll stop there and reserve. Thank you. Just so you know, you have, like, a minute and a half left, and it's only when the red light goes on that you're out of time. I thought it was red. Okay, so I should keep going. You can reserve it. You want me to save the rest? Now I've just stopped. It's your time. I know you reserved some time for rebuttal. So you still had, what was it, about a minute and a half left? Even on your seven minutes, if you want to use it now, you can. Yes, so I will go ahead. Set it up at a minute and a half for counsel. Yes. And whenever you're ready. So I was speaking about 304H. And, again, that is express language that applies here that says that there shall be no breach. Here the arbitrator recognized at 837 that commercial reasonableness is a higher standard than prudent business practice. And so that is ignoring the clear meaning of the party's contract. That is a quintessential example of manifest disregard of the party's agreement. And so, again, any three of those buckets of findings forecloses the arbitrator's award of the accuracy burnout. And I'll reserve the rest of my time now. Thank you. Good afternoon, Your Honors. My name is John Roser, counsel for the appellees Olaf Bergheim and Morticia Garib. I think part of the issue here is that the appellants have misconstrued the award. If we look to the arbitrator's award, when she looked at these extra contractual requirements that Sirona had added to product finalization, she looked at them from two points of view. At 826, she said she's looking at these requirements from the point of product finalization, which relates to the payment of the accuracy burnout, but that she's also looking at them from the point of whether they were reasonable in terms of getting the product on the market. But she looked at it from that point of view with respect to the revenue burnout. She did not say they were commercially reasonable in the sense of changing the contractual term product finalization. What she found, and the record is very clear, was that once product finalization had been certified, there would be testing to determine whether the appellees would earn the accuracy burnout. Now, what she also found is she went through each of these categories of extra contractual requirements. Was it reasonable from the point of view of product finalization and the accuracy burnout? And was it reasonable from the point of revenue burnout? And for each one of these, she found that this was an extra contractual requirement that Sirona had added to the term product finalization. And she said she even noted with two of them, because she had testimony on this issue, and it's in the record, that in the initial drafts of product finalization, these requirements had been put in by Sirona and they had been negotiated out. Now, if you look at what she actually found with respect to the accuracy burnout, she wrote, certification of product finalization was delayed by Sirona as it awaited completion of requirements for product finalization for going to market. So that's what she's referring to. They added all of these extra contractual requirements, so it was delayed, certification was delayed because they added these extra contractual requirements. That's what she found. But this was still a heavily negotiated agreement, and it seemed a little odd that the arbitrator would rely on Mr. Harvard's ad hoc testing because that wasn't contemplated at all in the agreement, and they had really focused on the certification occurring, albeit in good faith. But there were no provisions made or other objective standards that were set in place in the agreement to trigger the accuracy burnout. Why didn't it go too far to do what she did? Well, I don't believe it went too far because if you heavily negotiate and you say product finalization is going to be X number of requirements, I don't think you really anticipate that the other side is going to come in and as one person testified, that was just a suggestion sheet. I could add to it whatever I wanted. That was the Sirona point of view at the hearing, and that was something that I don't think that my client anticipated. They spent significant time. I mean, there are a whole host of things. Beta testing, knowledge transfer, integrate beta testing was specifically negotiated out and then they required it. The knowledge transfer, integrating it with their various programs, that was in the original draft and it was negotiated out. So to anticipate that your party is going to breach in that sense, I don't think was in the party's minds after they had gone through this whole process of what product finalization would be. And as she indicates, there were requests to certify, there were requests to do the testing, and it wasn't just a question of whether we could have done the entire testing under the contract. We would have had to have gotten permission to use the number of the product that we wanted to use or were required to use for the testing. They rejected that request every time, just like they rejected the certification of product finalization request. But I think the point here is that even if the court were to find that she committed some serious error, that's an insufficient basis to vacate the award under the law. Appellants must show that the arbitrator was not interpreting the contract and instead based her decision on other factors. And there's no evidence in the record that that's what she was doing here. I mean, her award goes through the terms of the contract, goes through the evidence, and is very clear. When you look at the other cases cited by the appellants, In re Marine and Harry Hoffman, it's very clear that in those situations the arbitrator went off the contract, made findings that were specifically contrary to the contract, said that they had carte blanche to decide this how they wanted to and that they were using equity instead of interpreting the contract. If there is any colorable basis for her decision, if there's any indication that she's interpreting the contract and not going off base with the contract, then it's our position that this award should be upheld. Getting to the manifest disregard of the law, again, this is a very high burden for the appellants. There's no indication here that she manifestly disregarded Delaware law. She specifically cites law and goes through and quotes the law that was put forth to her by the appellants. She says, yes, I understand the law does not allow me to look at these projections without any analysis, but then she says it also doesn't require me to reject it out of hand. And then she cites and quotes Delaware law. And, in fact, in one of the cases, the appellants have now argued that there should be a presumption that should have been upheld by the arbitrator. And one of the cases that are cited by the appellants, the second SIGA case from Delaware, the award actually rejected damages and said it was... Sorry, the Chancery Court actually rejected damages and said it was too speculative. It went to the Supreme Court. The Supreme Court said, no, we don't think it's too speculative, sent it back, and then the Chancery Court found damages. And the Supreme Court upheld that. So that's a Delaware case where they said that these types of expectation damages are not too speculative. They cited that case. So we don't believe that there is this presumption of a prescription of damages in this situation under Delaware law that the arbitrator ignored. Thank you. Ms. Corcoran. So, yes, this was a heavily negotiated contract. The parties listed, it's at A531 of the appendix. Those are the product finalization requirements. Those would have to be done by the Argus team in order to achieve the accuracy or earn out. And in addition to that, as Judge Carney pointed out, there would have to actually be the calculation of an accuracy number consistent with the protocol laid out in the contract as the arbitrator acknowledged that protocol was never satisfied. What the arbitrator found was not that Sirona required petitioners or their team, the Argus team, to do anything beyond the product requirements at A531. There is no factual finding anywhere in the arbitration award that these requirements on 531 were satisfied as of the 18-month anniversary. What happened, according to the arbitration award, I want to be very clear, in both the red brief and just now, a number of factual assertions were made that are citations to the petitioners pleading and not to the arbitration award itself. What the arbitrator found was that Sirona was, in parallel with the Argus team, undertaking extra-contractual tasks to prepare the product for market. And, in fact, if Sirona had not done that, we'd probably be here facing a challenge that they did not act in good faith with respect to getting the product to market on time. But with respect to standard of review, would you agree that we need to uphold the arbitrator's decision if it's supported by at least a barely colorable justification? Yes, and under Youssef and other cases, it's not enough to just simply say that there's a dispute about contractual interpretation. The petitioners would have to actually identify language in the arbitration or in the agreement that the petitioners violated. They did not do that in their brief. They have not done that here. You cannot pinpoint any language in the party's agreement that Sirona violated. And, to the contrary, we have a provision, 304H, which says there shall not be a breach under a circumstance where Sirona is acting consistent with prudent business practice. And that language is not limited to the revenue earn-out award. And I didn't hear petitioners suggest otherwise. Petitioners suggest, well, there's a distinction between acting reasonably with respect to putting the product on the market and acting reasonably with respect to the accuracy earn-out. But 304H is very broad. It does not leave any space for that sort of distinction. And the arbitrator certainly didn't suggest that Sirona was acting in bad faith with respect to the tasks that its engineer was undertaking. I think it's very important to read the arbitration award. The arbitrator's own factual findings foreclose any possibility of awarding the accuracy earn-out. And we've also made an argument about the revenue earn-out. I'm happy to rest on the briefs unless the Court has any questions. Thank you. Thank you. We're going to take the matter under advisement. Mr. Condon, do you need more information from Mr. Russer? Because, okay, I know you were a little late and didn't formally check in, Mr. Russer. All right, thank you very much. We'll take the matter under advisement. The last case on our calendar in Ray Residential Capital is on submission, and so we stand adjourned. Court is adjourned.